IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

FILED

MAR - 7 2005

TRESA L. DEPPNER, CLE...
... ......................
S.......... District of West ............

RONALD HOWERTON, PAMELA ADAIR,
RICKY COLLIS, JAMES CRUEY, ALBERT
DAVIS, DATSIE L. HARMON, CLARENCE
MATNEY, ROGER MILLS, RAYMOND
MUNCY, JACKIE PARSON, JOHN
SHRADER, RONALD THOMPSON,
UNITED MINE WORKERS OF AMERICA,
and INTERNATIONAL UNION, UNITED
MINE WORKERS OF AMERICA,

                            Plaintiffs

      v.

BLUESTONE INDUSTRIES, INC,
BLUESTONE COAL CORPORTION,
ENERGY PLUS, INC., and FOUR
CORNERS CORPORATION

                         Defendants.

CIVIL ACTION NO. _5:05-0198_

## COMPLAINT FOR THE PROVISION OF REQUIRED RETIREE HEALTH BENEFITS

       This is an action for damages for breach of a collective bargaining agreement, and for

injunctive and other relief as a result of Defendants' refusal to provide health coverage to retirees

Ronald Howerton, Pamela Adair, Ricky Collis, James Cruey, Albert Davis, Datsie L. Harmon,

Clarence Matney, Roger Mills, Raymond Muncy, Jackie Parson, John Shrader, and Ronald

Thompson ("Individual Plaintiffs") and their eligible dependents.

       In order to prevent grievous and irreparable harm being suffered by the retirees of Four

Corners due to a lack of healthcare coverage, the Individual Plaintiffs, and International Union,

United Mine Workers of America ("UMWA") bring this complaint against the Defendants

Bluestone Industries, Inc. ("Bluestone Industries"), Bluestone Coal Corporation ("Bluestone

Coal"), Energy Plus, Inc. ("Energy Plus"), and Four Corners Corporation ("Four Corners") for

their failure to provide the Individual Plaintiffs with healthcare coverage in violation of their

contractually guaranteed rights and their rights under the Employment Retirement Income

Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq..

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to Section 301 of the Labor

Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 502(a)(1)(B), (a)(2), (a)(3)

and (e)(1) of ERISA, 29 U.S.C. § 1132(a)(1)(B), (a)(2), (a)(3) and (e)(1).

2. Venue is proper under 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2), in that the

Defendants transact business in this District, and the occurrences giving rise to this claim took

place in this District.

## PARTIES

3. Plaintiff Ronald Howerton is a retired member of the UMWA whose last classified

signatory employment was with the Defendant Four Corners on February 28, 1998.  Mr.

Howerton resides in Fairdale, West Virginia..

4. Plaintiff Pamela Adair is a retired member of the UMWA whose last classified

signatory employment was with the Defendant Four Corners on March 27, 1998.  Ms. Adair

resides in Cucumber, West Virginia.

2

5. Plaintiff Ricky Collis is a retired member of the UMWA whose last classified signatory employment was with the Defendant Four Corners on May 1, 2000. Mr. Collis resides in War, West Virginia.

6. Plaintiff James Cruey is a retired member of the UMWA whose last classified signatory employment was with the Defendant Four Corners on May 3, 1999. Mr. Cruey resides in Helen, West Virginia.

7. Plaintiff Albert Davis is a retired member of the UMWA whose last classified signatory employment was with the Defendant Four Corners. Mr. Davis resides in Camp Creek, West Virginia.

8. Plaintiff Datsie L. Harmon is a retired member of the UMWA whose last classified signatory employment was with the Defendant Four Corners. Mr. Harmon resides in Warriormine, West Virginia.

9. Plaintiff Clarence Matney is a retired member of the UMWA whose last classified signatory employment was with the Defendant Four Corners on February 2, 1998. Mr. Matney resides in Panther, West Virginia.

10. Plaintiff Roger Mills is a retired member of the UMWA whose last classified signatory employment was with the Defendant Four Corners on February 26, 2001. Mr. Mills resides in Herndon, West Virginia.

11. Plaintiff Raymond Muncy is a retired member of the UMWA whose last classified signatory employment was with the Defendant Four Corners on November 3, 1998. Mr. Muncy resides in Squire, West Virginia.

3

12. Plaintiff Jackie Parson is a retired member of the UMWA whose last classified signatory employment was with the Defendant Four Corners on December 29, 1997. Mr. Parson resides in Rock, West Virginia.

13. Plaintiff John Shrader is a retired member of the UMWA whose last classified signatory employment was with the Defendant Four Corners on August 4, 2000. Mr. Shrader resides in Iaeger, West Virginia.

14. Plaintiff Ronald Thompson is a retired member of the UMWA whose last classified signatory employment was with the Defendant Four Corners on May 23, 2001. Mr. Thompson resides in Flat Top, West Virginia.

15. Plaintiff UMWA is a labor organization within the meaning of Section 2(2) of the LMRA, 29 U.S.C. §152(5), and represents the employees of the Defendants for purposes of collective bargaining. The principal office of Plaintiff UMWA is located at 8315 Lee Highway, Fairfax, VA 22301-2215.

16. Defendant Bluestone Industries is a corporation organized and existing under the laws of West Virginia, and is presently or was formerly engaged in the business of mining, processing, transporting and/or selling coal at its facilities in McDowell County, West Virginia. Bluestone Industries has many wholly owned subsidiaries which have been signatories to the National Bituminous Coal Wage Agreement ("NBCWA"). Defendant is and was, at all times described herein, an "employer" within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2), and Section 2(5) of ERISA, 29 U.S.C. § 1002(5)

17. Defendant Bluestone Coal Corporation is a corporation organized and existing under the laws of West Virginia, and is presently or was formerly engaged in the business of mining,

4

processing, transporting and/or selling coal at its facilities in or near the Keystone No. 6 Strip Mine in McDowell County, West Virginia. Bluestone Coal is a wholly owned subsidiary of Bluestone Industries and is the primary operator and manager of Bluestone Industries' holdings. Bluestone Coal does operate a number of coal mines directly; however, it has historically contracted out mining at many properties. Bluestone Coal is signatory to several successive NBCWAs, and is and was, at all times described herein, an "employer" within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2), and ERISA, 29 U.S.C. § 1002(5).

18. Defendant Energy Plus is a corporation organized and existing under the laws of West Virginia, and is presently or was formerly engaged in the business of mining, processing, transporting and/or selling coal at its facilities in McDowell County, West Virginia. Energy Plus is a wholly owned subsidiary of Bluestone Industries. Energy Plus is and was, at all relevant times, an "employer" within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2), and Section 2(5) of ERISA, 29 U.S.C. § 1002(5).

19. Defendant Four Corners is bankrupt and its corporate status is terminated. Prior to its bankruptcy, Four Corners was a West Virginia corporation engaged in the business of mining, processing, transporting and/or selling coal at its facilities in McDowell County, West Virginia. Four Corners is signatory to the 1998 NBCWA, and was at all times described herein, an "employer" within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2), and Section 2(5) of ERISA, 29 U.S.C. § 1002(5).

## FACTUAL BACKGROUND

20. Four Corners was incorporated in the state of West Virginia on March 17, 1995. At the time of incorporation, Four Corners was wholly owned by Bluestone Industries.

5

21. Shortly after its creation, Four Corners became signatory to the 1993 NBCWA. Article XX of the 1993 NBCWA obligated Four Corners to provide lifetime retiree health care to its eligible retirees. Four Corners later became signatory to the 1998 NBCWA, which contained the same retiree health care obligations and was in full force and effect at all times relevant to the matters alleged herein.

22. On December 11, 2000, Jeff Collis purchased the stock of Four Corners.

23. At the time of purchase, Collis was not able to pay for Four Corners' stock.

24. Bluestone Industries loaned Collis $135,000 which he "paid" to Bluestone Industries as consideration for the purchase of Four Corners; in essence, no cash exchanged hands.

25. The sale was a sham. Bluestone Industries and Bluestone Coal (collectively "Bluestone Companies") only wanted to create the appearance that they had sold Four Corners so that they could effectively shed their contractual obligation to provide the retirees of Four Corners with lifetime healthcare.

26. Through this sham transaction, Bluestone Industries transferred its mining equipment, valued at approximately $1,234,629.00, without any intention of ever relinquishing control over these assets to Four Corners under Collis' nominal ownership.

27. While Four Corners retained possession of its assets after it was sold to Collis, the Bluestone companies retained control over Four Corners and its assets under the terms of a Security Agreement with Bluestone Industries and a Contract Mining Agreement with Bluestone Coal.

28. The Security Agreement covered the two major assets of Four Corners, an EIMCO miner secured in the amount of $1,005,347.00 and an EIMCO hauler secured in the amount of $244,285.00.

6

29.  In addition to providing Bluestone Industries a secured interest in Four Corners' mining equipment, the Security Agreement provided that Four Corners could not move/remove the mining equipment without the permission of the Bluestone companies.

30.  Under the terms of the Contract Mining Agreement, Four Corners was restricted to mining and removing coal solely for the benefit of Bluestone Coal. Bluestone Coal also reserved the right to designate what areas Four Corners would be allowed to mine.

31.  Subsequent to the sale, Bluestone Industries, Bluestone Coal, and Four Corners continued to operate as a single business enterprise just as they had prior to the sale. Bluestone Coal and Bluestone Industries are each alter egos of Four Corners. Collis was simply a pawn in the Bluestone companies' corporate shell game to avoid financial responsibility for the Four Corners retirees' health care.

32.  Under Collis' nominal ownership, Four Corners operated for only approximately eight months. In October 2001, under the pressure of mounting debts, Four Corners shut down its mining operation, leaving the mining equipment in the mine. The next day, a newly incorporated company called Energy Plus began using the mining equipment.

33.  Bluestone Coal had incorporated Energy Plus, a West Virginia corporation, on August 22, 2001, just before Four Corners ceased its operations.

34.  When Four Corners shut down its mining operation, Bluestone Coal immediately replaced Four Corners with Energy Plus. Subsequently, Energy Plus, professing no connection to Four Corners and no obligation to assume Four Corners' contractual obligations to the UMWA, signed a Memorandum of Understanding with the UMWA that kept the UMWA workforce operating the mine under a modified version of the 1998 NBCWA. Energy Plus refused, however,

7

to assume Four Corners' obligation to provide retiree healthcare benefits or to include Article XX in the modified collective bargaining agreement.

35. The Bluestone Companies used their control over Four Corners to cause it to fail. They created Energy Plus to fill the void after Four Corners failed. Energy Plus is an alter ego/disguised continuance of Four Corners. Energy Plus is also the agent and alter-ego of the Bluestone companies.

36. In October 2001, a Four Corners retiree filed an application for benefits from the UMWA 1993 Benefit Plan. The UMWA 1993 Benefit Plan is a multiemployer plan that was created as an "orphan plan" that would provide benefits to retired miners and their dependents and surviving spouses in situations where the responsible employer was not providing those benefits. Since Four Corners was a signatory to the 1998 NBCWA, a Four Corners retiree has the right to claim eligibility for benefits from the UMWA 1993 Benefit Plan.

37. In accordance with the 1998 NBCWA and subsequent NBCWAs, a retiree is eligible for benefits from the UMWA 1993 Benefit Plan if his last signatory Employer is "no longer in business" under the terms of Article XX of the NBCWA.

38. Under the "no longer in business" requirement, a retiree is eligible for benefits if his last signatory Employer was obligated to contribute to the UMWA 1993 Benefit Trust when it ceased operations and the retiree is unable to receive health and other non-pension benefits because his last signatory Employer (including successors and assigns) is no longer in business.

39. After an investigation by the staff of the UMWA 1993 Benefit Plan into whether Four Corners was "no longer in business," the Union Trustees and Employer Trustees of the 1993 Plan deadlocked on their determination of the retiree's eligibility.

8

40. In March 2004, as required by Section 302(c)(5) of the LMRA, as well as the terms of the 1993 Benefit Plan, the eligibility deadlock over the Four Corners retirees was submitted to Arbitrator Mark L. Irvings for resolution. Arbitrator Irvings ruled that Energy Plus is a successor to Four Corners within the meaning of the UMWA 1993 Benefit Plan. All former employees of Four Corners have been ruled ineligible for benefits under the UMWA 1993 Benefit Plan, and are currently without healthcare benefits.

41. The Arbitrator found that Bluestone Industries did whatever it could to prevent a full and accurate picture of the financial relationship between Bluestone Industries, Four Corners, and Energy Plus. In his decision, Arbitrator Irvings stated "[t]here is no evidence which supports a conclusion that the series of transactions were effectuated in good faith."

42. The Arbitration decision also states that the only difference between Bluestone Industries before and after selling Four Corners to Collis was that it had a legally plausible theory as to why it and its subsidiaries were free from the obligation to provide lifetime health coverage to the Four Corners retirees.

43. As the alter ego/disguised continuance of Four Corners, Bluestone Coal is financially responsible for the healthcare costs incurred by the retirees of Four Corners.

44. As the alter ego/disguised continuance of Bluestone Coal, Bluestone Industries is financially responsible for all healthcare costs attributable to Bluestone Coal is.

45. As the alter ego/disguised continuance of Four Corners, Energy Plus is financially responsible for the healthcare costs incurred by the retirees of Four Corners under the terms of Four Corners' contract.

9

## CAUSES OF ACTION

### (1) Breach of Collective Bargaining Agreement:
### Bluestone Industries, Bluestone Coal and Four Corners

46. Plaintiffs reallege and incorporate Paragraphs 1 through 45.

47. Defendants Bluestone Industries, Bluestone Coal, and Four Corners have breached the 1998 NBCWA by purposefully orchestrating the sham sale of Four Corners in order to shed their joint and several responsibility to provide lifetime healthcare to its retirees.

48. As a result of that breach, the Individual Plaintiffs have incurred damages in the form of medical expenses which should have been covered by an employee benefit plan required under the terms of the 1998 NBCWA.

49. As the alter egos of Four Corners, Bluestone Industries and Bluestone Coal are contractually obligated to provide healthcare coverage for the Four Corners retirees.


### (2) Breach of Collective Bargaining Agreement:  Energy Plus

50. Plaintiffs reallege and incorporate Paragraphs 1 through 49.

51. Defendant Energy Plus breached the 1998 NBCWA by failing to provide the Four Corners retirees with their contractually mandated health benefits.

52. As a result of that breach, the Individual Plaintiffs have incurred damages in the form of medical expenses which should have been covered by an employee benefit plan maintained pursuant to the 1998 NBCWA.

53. As the alter ego/disguised continuance of Four Corners, Energy Plus is required to provide health benefits as set forth under the 1998 NBCWA.

10

### (3) Breach Collective Bargaining Agreement: All Defendants

54.  Plaintiffs reallege and incorporate paragraphs 1 through 53.

55.  As the alter egos of Four Corners, all of the Defendants violated the terms of the 1998

NBCWA and its implied covenant of good faith & fair dealing in Four Corners' collective

bargaining agreement with the UMWA by coordinating the sale of Four Corners for the purpose of

avoiding the obligation to provide the Four Corners retirees with lifetime healthcare.

56.  The Defendants are liable for the benefits owed to the Individual Plaintiffs.

### (4) Violation of ERISA: Failure to Provide Benefits Under an Employee Benefit Plan: All Defendants

57.  Plaintiffs reallege and incorporate Paragraphs 1 through 56.

58.  The Defendants have failed and refused to maintain an employee benefit plan or

otherwise provide healthcare benefits to the Four Corners retirees, who have a vested right to

lifetime health care benefits from their Employer.

### (5) Violation of ERISA: Breach of Fiduciary Duty to Provide Benefits: Bluestone Coal and Bluestone Industries

59.  Plaintiffs reallege and incorporate Paragraphs 1 through 58.

60.  The Individual Plaintiffs have been deprived of benefits to which they are entitled as a

result of the sham sale of Four Corners, planned and executed by Defendants Bluestone Industries

and Bluestone Coal.

61.  Prior to the sale of Four Corners, Bluestone Industries and Bluestone Coal provided the

retirees of Four Corners with healthcare benefits.  In accordance with Section 404(a) of ERISA, 29

U.S.C. § 1104(a), Bluestone Industries and Bluestone Coal have a fiduciary duty to fund/maintain

the healthcare plan.  Bluestone Industries and Bluestone Coal failed to do so.

62.  Defendants Bluestone Industries and Bluestone Coal are liable for breach of their fiduciary duty to the Individual Plaintiffs, and are liable for the benefits that they owe the Individual Plaintiffs.

## DAMAGES

63.  As a direct and proximate result of the actions of the Defendants as set forth above, the Individual Plaintiffs have incurred and continue to incur unpaid medical bills for the treatment of themselves and their dependents.

64.  As a direct and proximate result of the actions of the Defendants as set forth above, the Individual Plaintiffs and their eligible dependents are presently suffering and will continue to suffer the deprivation of health and other insurance to which they are entitled.  The Individual Plaintiffs are suffering imminent and irreparable harm because their health benefits have been terminated, and they and their dependents have been and will continue to be deprived of necessary medical care and treatment, or have been and will continue to be forced to obtain medical care only at the cost of using funds necessary to meet their other essential living expenses.

65.  The Individual Plaintiffs have no adequate or feasible administrative or legal remedies for the imminent and irreparable harm the Individual Plaintiffs will suffer by the continued deprivation of their health insurance coverage.  Any harm which could result to the Defendants by the granting of injunctive relief in this matter would be minor compared to the great, immediate and irreparable harm which will result to the Individual Plaintiffs if injunctive relief is not granted.

## PRAYER FOR RELIEF

**WHEREFORE,** in order to avoid the irreparable injury that will occur to the retirees of Four Corners for the reasons stated above, Individual Plaintiffs request that the Court:

12

1. Declare that the Defendants have each breached their duties under the 1998 NBCWA and ERISA as alleged herein;

2. Grant compensatory damages in accordance with the allegations of this complaint, including prejudgment interest on the amount of unpaid medical bills incurred by the Individual Plaintiffs;

3. Grant preliminary and permanent injunctive relief mandating that the Defendants provide all Individual Plaintiffs with the healthcare coverage and other insurance benefits the Individual Plaintiffs are entitled to under the 1998 NBCWA and the individual employer's healthcare plan;

4. Order the Defendants to immediately reimburse the Plaintiffs for all medical bills incurred by the Individual Plaintiffs;

5. Award costs, including reasonable attorneys fees; and

6. Grant the Individual Plaintiffs such other relief as the Court deems just and proper.

Plaintiffs request a trial by jury on all issues properly triable by jury.

> RONALD HOWERTON, et al.
> Plaintiffs, by Counsel

Bradley J. Pyles, State Bar #2998
Pyles, Haviland, Turner & Smith, LLP
P. O. Box 596
Logan, WV  25601
(304) 752-6000

13