IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

RONALD HOWERTON, et al.,

    **Plaintiffs,**

v.                           CIVIL ACTION NO. 5:05-00198

BLUESTONE INDUSTRIES, INC., et al.,

    **Defendants.**

### MEMORANDUM OPINION AND ORDER

Pending before the court are defendants' motion to dismiss (Doc. No. 9), defendants' motion to strike plaintiffs' response (Doc. No. 14), and defendants' motion to disqualify lawyers Mark Wilhite and the law firm of Mooney, Green, Baker & Saindon (Doc. No. 14). For the reasons outlined below, defendants' motion to dismiss (Doc. No. 9) is DENIED.

Because the court finds that the technical rules for filing a pleading have been satisfied by virtue of a member of the bar of this court's having discussed, reviewed, and approved plaintiffs' response to defendants' motion to dismiss, defendants' motions to disqualify lawyers and to strike plaintiffs' response (Doc. No. 14) are also DENIED.

### A.  Factual Background

Facts relevant to defendants' motion to dismiss are relatively clear. The individual plaintiffs here are retired members of the United Mine Workers of America ("UMWA") and retired employees of defendant Four Corners Corporation ("Four

Corners"). Four Corners was incorporated in West Virginia on March 17, 1995, and was at that time a wholly-owned subsidiary of defendant Bluestone Industries, Inc. ("Bluestone Industries"). While Bluestone Industries had a number of subsidiaries, including Four Corners, who signed the National Bituminous Coal Wage Agreement ("NBCWA") with the UMWA, it has never signed a wage agreement with the union.

Although defendant Four Corners is bankrupt and its corporate status has been terminated, prior to its bankruptcy, Four Corners was a West Virginia corporation engaged in the business of mining processing, transporting, and/or selling coal at its facilities in McDowell County, West Virginia. (Compl. ¶¶ 19-20.) Four Corners signed the 1998 NBCWA. (Id. ¶ 34.) On December 11, 2000, Jeff Collis ("Collis") purchased all the stock of Four Corners. By stock purchase, Four Corners continued to assume liability for providing healthcare benefits to Four Corners's retirees. (Id. ¶ 25.) Four Corners operated for approximately eight months under Collis's ownership, but, in October 2001, Four Corners shut down its operations and left its equipment in its mine.

Defendant Bluestone Coal Corporation ("Bluestone Coal") incorporated a company named Energy Plus, Inc. ("Energy Plus") which replaced Four Corners as a contract miner with Bluestone Coal when Four Corners ceased operations. (Id. ¶ 33.) Energy

Plus signed a Memorandum of Understanding with the UMWA workforce operating the mine under a modified version of the 1998 NBCWA. (Id.)  Energy Plus, however, refused to assume Four Corners's obligation to provide retiree healthcare benefits.

Plaintiffs allege that Collis purchased Four Corners's stock in a sham sale designed to keep defendants Bluestone Coal and Bluestone Industries from having to pay for Four Corners's health care obligations.  (See Doc. No. 13 at 5.)  Plaintiffs state that both before and after the sale, defendants Bluestone Coal, Bluestone Industries, and Four Corners all behaved as if they were part of one company.  (Compl. ¶ 31.)  Plaintiffs aver that Bluestone Industries and Bluestone Coal never intended to actually release control over any of the assets of Four Corners: defendants maintained control over Four Corners's assets by requiring Collis to sign a security agreement with them and Four Corners was not permitted to move these assets.  (Id.)  Further, the Contract Mining Agreement between Four Corners and Bluestone Coal restricted four Corners to mining and removing coal solely for the benefit of Bluestone Coal.  (Id.)

Plaintiffs note that after Four Corners closed its operations, a Four Corners retiree applied for healthcare benefits from the 1993 Benefit Plan.  In accordance with the 1998 NBCWA, a retiree is eligible for the 1993 Benefit Plan once the Trustee determines that the applicant's last signatory employer

-3-

in the coal industry is "no longer in business" under the parameters set forth in Article XX of the 1998 NBCWA.  In response to the retiree's application for benefits, the Union Trustees and Employer Trustees of the 1993 Plan deadlocked on their decision of the retiree's eligibility, specifically on the question as to whether Four Corners was "no longer in business." (See Compl. ¶ 39; Doc. 13 at 7.)

Plaintiffs aver that in March 2004, pursuant to Section 302 of the LMRA and the terms of the 1993 Plan, the question of Four Corners' business status was submitted to arbitrator Mark L. Irvings for resolution.  Arbitrator Irvings ruled that Energy Plus was a successor to Four Corners within the meaning of the UMWA 1993 benefit Plan; therefore, all former employees of Four Corners have been ruled ineligible for benefits under it.  (See Compl. ¶ 40; Doc. 13 at 7.)  The Arbitrator also ruled that Bluestone Industries had done whatever it could to prevent a full and accurate picture of the financial relationship between itself, Four Corners, and Energy Plus, stating that "[t]here is no evidence which supports a conclusion that the series of transactions were effectuated in good faith."  (See Compl. ¶ 41.) The Arbitrator stated that the only difference between Bluestone Industries before and after selling Four Corners to Collis was that it had a legally plausible theory as to why it and its

subsidiaries were free from the obligation to provide lifetime
health coverage to the Four Corners retirees.  (<u>Id.</u> ¶ 42.)

### B.  Standard of Review

Defendants have moved for dismissal under Rule 12(b)(6) of
the Federal Rules of Civil Procedure.  To succeed on a motion to
dismiss under Rule 12(b)(6), defendants must demonstrate that
plaintiffs' claims are "so insubstantial, implausible, foreclosed
by prior decisions of the [Supreme] Court, or otherwise
completely devoid of merit as not to involve a federal
controversy."  <u>Steel Company v. Citizens for a Better
Environment</u>, 523 U.S. 83, 89 (1998).  Defendants allege that
dismissal is appropriate because "[p]laintiffs can prove no set[]
of facts that would support their claims." (Doc. No. 10 at 4)
(citing <u>Flood v. New Hanover County</u>, 125 F.3d 249, 257 (4th Cir.
1987).

A Rule 12(b)(6) motion tests the sufficiency of the
pleading.  It does not resolve factual disputes, "the merits of a
claim, or the applicability of defenses."  <u>Republican Party of
North Carolina v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992)
(citations omitted).  In considering the motion, the claims must
be viewed in the light most favorable to the non-moving party and
all allegations in the complaint accepted as true.  <u>Id.</u>
Dismissal is appropriate only when it appears beyond a doubt that

no set of facts would entitle the pleader to relief.  <u>Conley v.</u>
<u>Gibson</u>, 355 U.S. 41, 45-46 (1957).

## C.  Analysis

Defendants contend that plaintiff has alleged no cause of
action against Bluestone Industries under Section 301 of the
Labor Management Relations Act ("LMRA") because Bluestone
Industries was not a signatory of the 1993 or 1998 NBCWAs.  (Doc.
No. 10 at 4.)  Further, defendants argue that plaintiffs cannot
allege a cause of action under Section 301 of the LMRA by
claiming that Bluestone Industries is an alter ego of Bluestone
Coal.  (<u>Id.</u> At 6.)  Defendants argue that as Bluestone Industries
is not a signatory to a collective bargaining agreement, it has
no employees subject to ERISA, and there is no subject matter
jurisdiction under ERISA.  (<u>Id.</u> at 10.)  Further, defendants
argue that what plaintiffs allege is in fact a cleverly-pled
tortious interference contract claim.

In response, plaintiffs state that defendants' arguments
"are based on erroneous assumptions about the procedural posture
of the case, misconstrue federal law, and . . . are contrary to
the standards for dismissal of a claim at this stage of
litigation."  (<u>See</u> Doc. No. 13 at 4.)  Plaintiffs state that
their assertions of alter ego liability against Bluestone Coal
and Bluestone Industries clearly provide jurisdiction for all of
plaintiffs' claims.  (<u>Id.</u>)  While acknowledging that the

existence of a contract is the quintessential element of plaintiffs' claim, plaintiffs assert that a factual or legal dispute concerning whether or not the alter ego theory obligates defendants to honor the contract does not negate this court's jurisdiction to hear the case.  (Id.)

     Having reviewed the arguments of the parties and relevant case law, the court must deny defendants motion to dismiss.  As plaintiffs note, defendants' motion is internally inconsistent in that it discusses both failure to state a claim for which relief can be granted and lack of jurisdiction over the subject matter in the complaint.  These are different concepts.  The Supreme Court has discussed the distinction between them in reference to Section 301 jurisdiction, holding that while federal courts lack jurisdiction to declare a contract invalid under the LMRA, the validity of a contract ceases to be a jurisdictional issue once a party has pled that a contract has been violated.  See Textron Lycoming Reciprocating Engine Div., AVCO Corp. v. UAW, 523 U.S. 653, 658 (1998) (stating that once a plaintiff alleges elements of subject matter jurisdiction pursuant to Section 301, the validity of a contract is an affirmative defense to be heard on the merits, not a question of subject matter jurisdiction).  Federal jurisprudence contains only a narrowly-circumscribed exception to this exception, where claims alleged are "so insubstantial, implausible, foreclosed by prior decisions of the

-7-

[Supreme] Court, or otherwise so completely devoid of merit as not to involve a federal controversy." Steel Company, 523 U.S. at 89 (quoting Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666 (1974)).  The court now evaluates defendants' motion under this standard.

Under Section 301 of the LMRA, the court has subject matter jurisdiction so long as four elements are established:

> (1)  a contract exists;
> (2)  the contract is between an employer and a labor organization representing employees in an industry effecting commerce;
> (3)  defendant has violated the contract; and
> (4)  the district court has jurisdiction over the parties.

See 29 U.S.C. § 185.

Here, plaintiffs contend that jurisdiction is established because

> (1)  a contract exists that includes defendants Bluestone Coal and Bluestone Industries by virtue of an alleged alter ego relationship with defendant Four Corners;
> (2)  that the contract is between an employer, Four Corners, and a labor organization representing employees in an industry affecting commerce, here, the UMWA;
> (3)  that defendants have allegedly violated this contract through orchestrating a sham sale of Four Corners to avoid liability for paying lifetime health benefits;
> (4)  that this district court has jurisdiction over the parties.

(See Compl. ¶¶ 3-47; Doc. No. 13 at 11.)

In response, defendants state that the plain language of Section 301 prohibits suit against them.  In United Mine Workers

-8-

of America v. Covenant Coal Corp., 977 F.2d 895, 897 (4th Cir.
1992), defendants note that the Fourth Circuit held that "a suit
against a non-signatory to a contract cannot be considered a suit
for violation of the contract." Id. "Section 301 litigants must
be parties to the bargaining agreement." Id. at 898. "Because
Covenant [the defendant] was not a party to an agreement with the
Union, it cannot be sued under the jurisdiction established by
Section 301." Id. Further, defendants note that in reference to
virtually identical provisions of ERISA, the Supreme Court stated
in Peacock v. Thomas, 516 U.S. 349, 353-54 (1996) that something
more was required to invoke jurisdiction of federal courts than
establishing the violation of an ERISA provision or a term of the
benefit plan and pierce the corporate veil. (See Doc. No. 10 at
7 (discussing Peacock)).

    By its own terms, Covenant Coal is limited to situations
where parties have alleged violations of tortious interference
with contract. See 977 F.2d 895-96. Defendant in Covenant was a
sublessee who allegedly caused other mining operators to
repudiate union contracts. Id. at 896. Although plaintiffs'
raise similar allegations here, particularly those in their first
count – that defendants "violated the 1998 NBCWA by purposefully
orchestrating the sham sale of Four Corners in order to shed
their . . . responsibility to provide lifetime healthcare" –
plaintiffs claim all involved defendants individually breached

contracts.  (See Compl. ¶¶ 31, 46-53.)  As such, this is not a restyled action for tortious interference as defendants claim.

This position finds further support in the Fourth Circuit's decision in A.T. Massey Coal Co. v. United Mine Workers of America, 799 F.2d 142 (4th Cir. 1986), cert. denied, 481 U.S. 1033 (1987).  In Massey, in reviewing two related cases, applying the language of Section 301, the Fourth Circuit upheld the district court's dismissal of a declaratory judgment action by Massey Coal Company for lack of subject matter jurisdiction, but upheld the district court's decision that it had subject matter jurisdiction to hear a suit alleging the existence of a contract that could bind non-signatory companies.  See id. at 146.  As plaintiffs note, where, as here, a complaint alleges facts that, if true, demonstrate that some party is bound to a collective bargaining agreement, the court has jurisdiction to hear the matter.  Id.; see also Holland v. Cline Bros. Mining, 877 F. Supp. 308, 315 (S.D. W. Va. 1995).

Further, it is clear that the logic of Peacock v. Thomas, 516 U.S. 349, 353-54 (1996) does not prevent this court from hearing this case.  Courts have recognized a number of analytical distinctions that clarify and delimit Peacock's reach.  If an alter-ego claim is asserted in conjunction with the underlying federal cause of action, the latter may provide the basis for ancillary jurisdiction over the alter-ego claim, obviating

<u>Peacock</u> concerns; it is only when an alter-ego claim is asserted in a separate judgment-enforcement proceeding that <u>Peacock</u> requires an independent basis for federal jurisdiction.  <u>See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.</u>, 212 F.3d 1031, 1037 (7th Cir. 2000) (citing cases limiting <u>Peacock</u> to successive litigation); <u>Ortolf v. Silver Bar Mines, Inc.</u>, 111 F.3d 85, 87 (9th Cir. 1997).[1]  As noted above, plaintiffs have alleged that all of defendants violated their obligations under federal law, specifically that

> [i]n accordance with Section 404(a) of ERISA, 29 U.S.C. § 1104(a), Bluestone Industries and Bluestone Coal have a fiduciary duty to fund/maintain the healthcare plan.  Bluestone Industries and Bluestone Coal failed to do so.

(<u>See</u> Compl. ¶ 61.)  This alleged violation of federal law claims provides the basis for this court to hear this case against Bluestone Industries, and, for that matter, against Bluestone Coal.  Other courts have analyzed claims similar to the one brought by plaintiffs here.  <u>See</u>, <u>e.g.</u>, <u>Lumpkin v. Envirodyne Indus., Inc.</u>, 933 F.2d 449, 461 (7th Cir.), <u>cert. denied</u>, 502

---

[1] <u>Peacock</u> is also not implicated in actions to reach and collect assets of the judgment debtor held by a third party; it is only when the plaintiff seeks to hold the third party personally liable on the judgment that an independent jurisdictional basis is required.  <u>Epperson v. Entm't Express, Inc.</u>, 242 F.3d 100, 106 (2d Cir. 2001) (citing cases holding <u>Peacock</u> inapplicable to cases involving fraudulent conveyances).

U.S. 939 (1991) (providing that the factors a court should consider when evaluating a veil-piercing claim are (1) the amount of respect given to the separate identity of the corporation by its shareholders; (2) the fraudulent intent of the incorporators; and (3) the degree of injustice visited on the litigants by respecting the corporate entity).

Having reviewed the record and relevant case law, because plaintiffs have alleged the four elements essential to a claim under Section 301 of the LMRA, defendants' motion to dismiss must be denied.

### D.  Conclusion

Defendants' motion to dismiss (Doc. No. 9) is hereby DENIED. The Clerk is directed to send a copy of this Memorandum Opinion and Order to all counsel of record.

It is SO ORDERED this 7th day of November, 2005.

Enter:

David A.  Faber
United States District Judge